THE STATE OF MINNESOTA ex rel DAVID LORING,

*vs.*

FRED. B. BENEDICT, auditor et al.

At the annual election in November, 1866, E. was elected register of
deeds for Winona county for the regular term commencing January 1st,
1867, and ending January 1st, 1869.   E. entered into the possession of
the office, and continued to hold the same until March 11th, 1869.   At
the annual election in November, 1868, G. was elected register of deeds
for said county, but in December, 1868, died, before qualifying, or enter-
ing upon the duties of said office.   On the 11th day of March, 1869, B.
was appointed register, qualified, and went into possession of the office,
and continues in possession thereof at this time.   At the annual election
in November, 1869, L. the relator, received a majority of the votes cast
for register, as appears by the canvass.   Upon the question whether the

Loring v. Benedict, auditor, et al.

election of a register of deeds at the annual election in November, 1869, was authorized by law, *Held*, that the death of G. did not create a *vacancy* in the office ; that not being in possession of the office, he was not an "*incumbent*" thereof in the meaning of *Sec. 2, Ch. 9, Gen. Stat.*, and that as the law stood at the time of G.'s death, E. was entitled to hold possession of the office until January 1st, 1871.

*Section 1, Ch.* 83, *Sp. Laws* 1869, declared said office vacant. *Held*, that if this declaration was void for unconstitutionality, E. would continue to hold until January 1st, 1871, and that this would be fatal to the relator's claim to the office. *Section 2, Ch.* 83, *Sp. Laws* 1869, authorized the county commissioners to fill the vacancy declared by section 1, by appointment, "for and during the term beginning January 1st, 1869, and ending January 1st, 1871." *Held*, that the appointment thus authorized was for and during the whole unexpired portion of the term referred to.

Admitting that the legislature had power to declare the office vacant by *section* 1 *of said chap.* 83, *section* 4, *article* 11 *of the Constitution* is satisfied, if provision is made by law for the election of county and township officers at stated periods, unless these periods are fixed at times so far remote from each other, as to raise the presumption of a design substantially to deprive these offices of their elective character.

*Held*, that the legislature cannot be said to have disregarded *section* 4, *article* 11, *of the State constitution* in providing for the appointment, or in providing that the appointee should hold until January 1st, 1871.

*Held*, that whether the declaration of the vacancy be void, or valid, the election of the relator in November, 1869, was unauthorized, and gave him no right to the office of register of deeds.

Upon the relation of David Loring, an order to show cause was made by the Hon. John M. Berry, associate justice of this court, requiring Fred. B. Benedict, county auditor for Winona county, and Samuel S. Beman, to appear in this court, at the January term, 1870, and show cause why a writ of mandamus should not issue, commanding the said Fred. B. Benedict to issue and deliver to the relator, a certificate showing his election to the office of register of deeds of said county. The respondents appeared pursuant to the order, and filed an answer, and a hearing was had. There

was no dispute as to the facts, all of which are fully stated in the opinion of the court.

R. A. JONES and GORDON E. COLE, for Relator.

BERRY & WATERMAN and MITCHELL & YALE, for Respondents.

*By the Court*—BERRY, J.—At the annual election in November, 1866, George Ellsbury was elected to the office of register of deeds for Winona county, for the regular term of two years, commencing January 1st, 1867.

At the annual election in November, 1868, Charles Goddard was elected to said office, for the regular term of two years, commencing January 1st, 1869.

In December, 1868, Goddard died, not having entered upon the duties of said office, or qualified for the same as provided by law. Ellsbury held possession of, and continued to discharge the duties of the office, until the 11th day of March, 1869, on which day S. S. Beman was appointed register of deeds, by the board of county commissioners for said county. Thereupon, Beman qualified, went into possession of the office, and continues in possession thereof at this time.

At the annual election in November, 1869, David Loring, the relator, received a majority of the votes cast by the qualified electors of said county, for the office of register of deeds, as appears by the abstract of votes made by the county canvassing board. The county auditor having refused on demand to issue a certificate of election to said Loring, application is made to this court for a mandamus to compel him to issue the same. All technical and formal objections are waived, and the only question which we are called upon to determine is, whether upon the foregoing

Loring v. Benedict, auditor, et. al.

state of facts, the election of a register of deeds at the annual election in November, 1869, was authorized by law.

The death of Goddard did not occasion a vacancy in the office. *Section 2, Ch. 9, General Statutes*, has reference to an "*incumbent*" of an office, that is to say, to a person *in possession* of an office. *Bouvier's Law Dict. Title Incumbent. Worcester's Dict., Webster's Dict.* Goddard not having qualified, or entered upon the duties of the office, and having deceased before the commencement of his term, (*Sec. 42, Ch. 1. Gen. Stat.*) was not *in possession* of said office, and therefore not an *incumbent* of the same.

The office did not then become vacant by his death. And as the law stood at the time of his death, there was no provision under which an *appointment* could be made to supercede Ellsbury, who was entitled to hold until his successor was elected and qualified. *Gen. Stat. Ch.* 8, § 125. Nor was there any provision for an *election* of a register of deeds to succeed Ellsbury, except at the annual election in November, 1870. *General Stat. Ch.* 1 §§ 1, 42, 43. If then the act of 1869, referred to below, had not been passed, Ellsbury would have continued to hold until January 1st, 1871, and the election of the relator at the annual election in November, 1869, would have been null and void, and notwithstanding he received a majority of votes cast for register of deeds, he would not have been entitled to the possession of the office. Then we have to inquire, What was the effect of the act of 1869 ?

This act which took effect February, 26th, 1869, provides as follows :

"*Section* 1. That the office of register of deeds, in and for the county of Winona, and State of Minnesota, be and the same is hereby declared vacant.

*Section* 2. That the board of county commissioners for the said county of Winona, be and the same are hereby authorized and empowered to fill said office of register of deeds, in and for said county of Winona, by appointment for and during the term beginning January 1st, 1869, and ending January 1st, 1871." *Ch.* 83, *Sp. Laws* 1869.

It is said by the relator, that it was not competent for the legislature to declare the office vacant in this way, and thus in effect remove Ellsbury, because the power of removal is limited to cases of malfeasance, or nonfeasance, on the part of an office holder. *Constitution Art.* 13, *Section* 2.

Whether this position is well taken, or not, we need not consider in this case, for if the legislature transcended its power, and the enactment was void, then as we have already seen, Ellsbury would continue to be entitled to hold the office, until January 1st, 1871, and this would be fatal to the claim of the relator : but admitting that it was competent for the legislature to declare the vacancy, then if the act of 1869 had gone no further than to declare such *vacancy,* an election of register of deeds, at the annual election in November, 1869, might have been legal and proper, and the person receiving the highest number of votes then cast for the office, might have been entitled to possession of the same. *Gen. St. Ch.* 1, § 43, *Ch.* 8, § 102. *Ch.* 9, § 6. The act, however, does not stop with the declaration of a vacancy, but proceeds to provide for filling the office *"for and during the term,* beginning January 1st, 1869, and ending January 1st, 1871," (that is) for and during the *whole* of the unexpired portion of the term described. It is however contended, that in this enactment, the legislature transcended its authority. *Section* 4, *Art.* 11 of our constitution declares, that "provision shall be made by law for the election of such county, or township officers, as may be neces-

sary." Under this section, it is claimed that county offices can be filled only by *election*, and that the *appointment* of county officers, under any circumstances, is forbidden.

This construction would prevent a vacancy from being filled by appointment for the length of time which would necessarily intervene between the occurrence of a vacancy, and the first succeeding general election, or even a special election. Certainly this would work great public, as well as private inconvenience and injury, and in our judgment, the constitution, framed as it was for practical purposes, need not, and should not receive a construction so narrow. In this opinion we are sustained by the cases of *The People vs. Fisher*, 24 *Wend.* 219. *Tappan vs. Grey*, 9 *Paige* 510. *People vs. Snedeker*, 14 *N. Y.* 55. And the fact that many provisions of our statutes, in reference to filling vacant offices by appointment, have been framed in accordance with this view of the constitution, and have been acted upon for years, is entitled to great weight as legislative and practical construction. *Gen. Stat. Ch.* 1. § 43. *Ch.* 8. §§ 95, 102, 116, 128, 154, 168, 230. *Ch.* 9. § 6.

The section of the constitution referred to is couched in general language. It requires that " provision shall be made by law for the election of * * county * * officers," but it does not prescribe what the provision shall be, nor how often elections shall occur. If provision is made for such election at stated periods, the injunction of the constitution is satisfied. It is possible to conceive of legislation, by which these periods should be fixed at times so far removed from each other, as to raise the presumption of a design to disregard the constitution, by virtually and substantially depriving these offices of an elective character; but there is no ground for any such presumption in this case. Having made provision for such elections at stated periods,

the legislature is not restrained from making such provision for filling vacancies by appointment, until a next general election, or for the balance of an unexpired term, as may be deemed advisable. Notwithstanding such appointments, provision is made for an election when the stated period is reached. There is nothing in the case at bar to take it out of the rule: for it is to be observed, that notwithstanding the special act of 1869, the next election for register of deeds will take place at the same time when it would have taken place if the act of 1869 had not been passed, to wit: at the annual election in Nov. 1870. As we have before seen, as the law stood before the passage of the special act of 1869, Ellsbury would have continued to hold until January 1st, 1871, and his successor would properly have been elected in Nov. 1870. This act of 1869 does not then interfere with the general provisions for elections at stated periods, any more than did the general law under which Ellsbury would have held until Jan. 1st, 1871. We cannot say then that the legislature has disregarded the constitutional require-ment, in providing that the appointee under the act of 1869, should hold his office until January 1st, 1871. It follows that the election of Loring, the relator, in November, 1869, was unauthorized, and gave him no right to the office of register of deeds.

Rule discharged.